**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Sealed

-----------------------------------------------------------------x

**UNITED STATES EX REAL JUAN CANDELARIA,**
    Qui Tam Relator,
         -against-
ST. JUDA MEDICAL EQUIPMENT  CORP., dba,
ST. JUDA MEDICAL EQUIPMENT CORPORATION
IN MIAMI, FL., NPI #1255820700 ("ST. JUDA");
LENSKY HERNANDEZ JOSE SANTIAGO
("SANTIAGO"); MANSO ALEA MICHALE "("ALEA");
DR. JANES/JOHN DOE #1 ("DOE #1"); RN JANES/
JOHN DOE #2 ("doE 32") AND OTHER KNOWN AND
UNKNOWN EMPLOYEES AND AGENTS OF
ST. JUDA, individually and in their official capacity,
    Defendants.

-----------------------------------------------------------------x

**QUI TAM COMPLAINT FOR**
**HEALTHCARE FRAUD**
**AND MEDICAL IDENTITY**
**THEFT**
CASE #___20cv23755_____

FILED BY____ ____ .D.C.

SEP - 8 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## I. JURISDICTION:

    1.This is a  **qui tam** or whistleblower action  under the Civil  False Claims Act,

("FCA "), as codified in   31  U.S.C.  Sections  3729-3733 ("FCA") and the  Fraud

Enforcement Recovery Act of 2009 (FERA"), Pub. L. No. 11-21, 123 Stat. 1617 (2009)]

and Patient Protection And Affordable Care Act of 2010 (PPACA), Pub. L. No. 111-148,

124 Stat. 119 (2010)] and Health Insurance and Portability and Accountability Act of

1996 (HIPAA), Pub.L 104-191, Title II, which prevent  healthcare fraud  and abuse and,

any action   under section 3730 may be brought in any judicial district in which the

defendant, or in the  case of  multiple defendants, any  one  defendant can  be found,

resides or transact business, or in which any acts proscribe by section 3729 of the Act

had   occurred,   brought  forward   under section 3730 of  the provisions of the False

Claims Act,   which allows private citizens with knowledge of fraud  to bring civil  action

on *behalf of  the government and to share in any recovery*, as a  reward  for bringing

violation to light regarding  companies and individuals that defraud  the government

[added Pub. L. 99-562, section 6(a), October 211, 1986, 100 Stat. 3158, amended Pub.

L'111-112, section 4(e), may 20, 2009, 123 Stat. 1625].[1], and the Relator alleges, among

other things, that  St. Juda,, a company headquartered in Fontainebleau, Florida, which,

at all time relevant times, distributed, marketed, and sold durable medical devices  in the

United States, including Florida, had caused the submission of false claims for payment

to  federal  healthcare  programs  that  were  not  invisible  bec-ause  they  were  tainted  by

medical identity theft, in violation of the FCA.

       2. .As a **qui tam** action alleging  that the defendants  had caused to  submitted

claims for payment to the medicare program in the amount of $23,5 33.55 on April 30,

2020 and June 8, 2020, for medical goods and services  neither ordered nor received by

---

[1] 18 USC section1001 authorizes criminal penalties against an individual and, section 1128B(a)(1) of the section Security Act authorizes  criminal penalties against any individual who, knowingly and willfully, makes or causes to be made any false statement or presentation of a material fact in any application for any benefit or pelmet  under the healthcare program.

    The  Civil False Claim Act,  31 u.S.C. Section 379-3733, impose liability, in part, on any person who: a) knowingly presents, or causes to be presented to an officer or employee of the United States Government, a  false or fraudulent claim for payment or approval; b) knowingly makes, uses, or causes to be made  or used, a false record or statement to get a false  or fraudulent  claim paid or approved by the  Government; orr b)…conspires  to defraud the Government by getting a false or fraudulently  claim allowed or paid.+, knowingly and willfully falsifies.., conceals or covers up any trick, scheme or device a material fact or… , and section 3571(d) authorizes fines of up to twice the gross gain delivered by the offender….

        Section 1128A(a)(a) of the Social Security Act impose liability, in part, on any person (including an organization, agency, or other entity) 1that knowingly presents or causes to be presented to an officer, employee, or agency of the United States, or any department or agency thereof,or any state agency… a claim...that the secretary determines is a medical or other item or services that the person knows or should know (a) was not provided as claimed; (b) the claim is false or fraudulent,

        18 USC Section 1035 authorizes criminal penalties against individuals in any matter involving a health care benefit program who knowingly and willfully falsifies, conceals or covered up any kick, scheme, or device a material fact; or use any material false fictitious ,or fraudulent statements or entry, in  connection with the delivery of or payment for health care benefits, items of services.

        18 USC Section 1347 authorizes criminal penalties against individuals who knowingly and willfully execute, or  attempt, to execute a scheme or artifice to defraud any healthcare benefit program.,,, The government may assert common law claims such as "Common Law fraud," 'money paid by mistake," or unjust enrichment."

relator , in violation of  Title XVIII of the Social Security Act, as codified in 42 U.S.C.

Sections 1395-1395lll (Medicare) and, therefore,  **JURISDICTION**  is proper before this

Honorable Article III Court pursuant to  31 U.S.C. Sections  3730(b)-3732, et seq.. The

False Claims Act imposes civil liability on "any person or entity who knowingly presents,

or causes to presented, a false or fraudulent claim for payment or approval" or knowingly

makes, use or cause to be made or used, a false record or statement material to a false

or fraudulent claim paid by the government.[2]The defendants are hereby charged with

Conspiracy to commit healthcare fraud and wire fraud. Unfortunately, healthcare fraud is

more common than most of us would like to believe.  Pursuant to 31 USC Section

3730(d), relator   seeks **reasonable expense, attorney's fees  and a share of the**

**proceed  of a prospective settlement.**

### II-<u>VENUE</u>

3 .  Under 31 U.S.C. Sections 3732(a) and 28 U.S.C. Section 1391(a)1) this "may

be brought   in any district in which the defendant  or, in the case of multiple defendants,

any of the defendant   can be found, resides, transacts business, or which any act

prescribed by section 3729 occurred,"  [id] and, as  an action alleging that the defendant

transacted business in Florida and New York by recruiting  ER doctors  with various

emergency rooms located in the Dade County, Florida, causing these providers to falsify

medical records in the Dade County which were then used to submit bills sent to the

---

[2]     According to the U.S. Department of Health and Human Services, medical identity theft occurs           when personal information is stolen and used to obtain medical care, buy drugs, or submit falke billing.[see Medical ID Theft/Fraud Information, Office of the Inspector General U.S. Dep't. Of Health &  Human Servs.,                    (last visited March 21, 2016)]. The consequences of medical identity theft are severe and typically take one of two forms. (a) financial or medical [id.]. Financial consequences are frequently the result of false claims being filed. False insurance claims can have  dramatically adverse consequences, including fraudulent bills at times costing over $100,000, and the process of getting false claims removed from your credit history is long,  arduous, and cumbersome. . Often, patients are the victims of those in whom they place the greatest  amount of trust:doctors/nurses. Regardless of how the medical information was stolen, victims can suffer a shocking impact from medical identity theft.

government for reimbursement. This Qui Tam Complaint is being filed under seal pursuant to  31 U.S.C. Section 3730(b)(b)(2) and a copy  has been served upon the U.S. Attorney for the judicial district where the qui tam  complaint  was filed and on the Attorney General of the United States, the defendant transact business in Fontainebleau, which is geographically located within the Southern District of Florida.

### III-<u>PARTIES</u>:

**A.      The  Relator Juan Candelaria:**

4. Relator Juan Candelaria ("Candelaria" or "Relator"), for himself, and for his heirs, successors, attorneys, agents, and assigns,  is a low ($900) income per month End-Stage Renal Disease ("ESRD")("Qualifying Disability")  member of the Specified Low-Income Medicare Beneficiary  ("SLMB") Program. He is full dual eligible. Dental exams, most dental care or denture and Routine eye exams, eyeglasses, contacts; Long Term- Care ("LTC")  and hearing aids or related exams and services are **not** covered by my SLMB Program. Relator   is knowledgeable about and aware of the health care services he needs, orders and receives (or not) , keeps good records of medical care, and *closely reviews all medical bills* he receives to make sure that he actually received the treatment ,goods and services for which his medicare card is  charged and question suspicious expenses to the best of his ability. Relator had neither ordered nor received medical care goods, services or treatments from St. Juda Medical Equipment Corporation or its agents or employees between April 30, 2020 and June 8, 2020 and, in fact, Relator had never done business with any of the defendants, with the exception of a telephone conversation he had with Defendant  Lensky Hernandez Jose  Santiago in the morning of **<u>Tuesday, July 28, 2020</u>**.

**B.THE DEFENDANTS**:

5. **The DEFENDANT ST. JUDA MEDICAL EQUIPMENT CORP. , d.b.a. St. Juda Medical Equipment Corp. in Miami (CMS 855-8 Enrolment Application Filed with the National Supplier Clearinghouse ("NSC") (' hereinafter collectively referred to as "ST. JUDA"**) is doing business as a local retailer of St. Jude Medical Equipment Corp.., providing medical supplies and equipment which are considered as medicare chargeable items.. The store is a profit Corporation located at 175 Fontainebleau Boulevard, Suite 2G6A, Miami, Florida 33172, customer phone number 786-451-9416 [this profile was extracted from the Dataset published on August 21, 2020 by the Centers for Medicare & Medicaid Services ("CMS") authorized to do business in the United States Under Employer Identification Number **82-3172291**, and, upon information and believe, it is a Medicare Supplier, within the purview, true intent and meaning of 42 CFR section 400.202. And, upon information and belief, *Pursuant to the instruction of Defendant Alea and with the knowledge of Defendant Santiago*, Defendant St. Jude knowingly presented, or caused to presented, a false or fraudulent claim for payment or approval by Medicare between April 30, 2020 and June 8,2020 in the amount of $23,533.55, using relator's Medicare card number, for medical goods, treatment or services Relato had neither ordered nor received and which the Defendants neither provided nor intended to provide, in violation of the FCA. .[see for more details].

. 6. Defendant LENSKY HERNANDEZ JOSE SANTIAGO ("SANTIGO") is the former president and registered agent for ST. Jude and, individually and in his employment capacity, Defendant Santiago had conspired with other known and unknown employees and agents of St. Juda to submit a false claim or claims to the government or causes another to submit a false claim to the government or knowingly

made a false record or statement to get a false claim paid by the medicare  between April 30, 2020 and June 8, 2020, reckless disregard of the truth or falsity and inviolation of State and Federal False Claims Acts.  Defendant Santiago has conspired  with other known  and  unknown  employees  and  agents  of  St.  Juda  to  defraud  the  medicare Program.

7.  **DEFENDAN MANSO ALEA, MICHELE ("MANSO")** is being sued individually and  in  his  capacity  as  agent  and  current  president  for  St.  Jude  Medical  equipment Corporation. Defendant Manson has conspired with Defendant St. Jude and Santigo to defraud  Medicare  using  Relator's  medicare  card  number  without  express  or  imply authorization,  in  violation  of  the  FCA.  Pursuant  to  42  UCF  Section  414.422(d),  the Contract Supplier shall notify CMC if it is  negotiating a change of ownership 60 calendar days before the anticipated date of the change. The contract supplier shall comply with all  CMS   enrollment  requirements  regarding  changes  of  ownership..  The  successor entity  must  notify  beneficiaries  [see  42  CFR  414.422(d)].  Defendant  Manso  has conspired  with  other  known  and  unknown  employees  of  St.  Jude  to  defraud  the Medicare Program in violation of the FCA

8.  **DEFENDANT JANE/JOHN DOE#1** ("DOE#1")  is being sued individually and  in it capacity as a physician authorized to practice medicine at the State of Florida and,  individually  and  in  its   professional  capacity,  Defendants  DOE  #1  had  conspired with  Defendants  St.  Jude,  Alea  and  Santiago  to  defraud  Medicare,  in  violation  of  the FCA. Defendant Doe1 has conspired with other known  and  unknown  employees  and agents of St. Jude to defraud the Medicare program, in violation of the FCA;

9.  **DEFENDANT JANE/JOHN DOE #2 ("DOE#2)** is being sued individually and  in  its  capacity  as  a  Registered  Nurse  (RN)  at  Florida  and,  individually  and  in  its

professional capacity, Defendant DO#2 had conspired with other known and unknown employees and agents of St.Jude to defraud the medicare Program, in violation of the FCA.

## IV-FACTS:

### A. Hospital Revenue Cycle Operation:

10. To understand how the actual use of patient information occurs,  it is helpful to have a thorough understanding of *hospital revenue cycle operation;* **(a)**  for outpatient appointments, patients generally have their first interaction with a provider during the scheduling process; **(b)** for inpatient procedures, it might be during an initial  scheduling process or upon the patient's arrival  at the hospital.

11.  All of these initial provider **encounters** with a patient will include registration elements; collecting the patient's  information, such  the patient's name, date of birth,  social security number, address,   ethic background, racial background, insurance information, billing address, and more [see e.g *Paul Ohm,Broken Promises of Privacy: Responding to the Surprising Failure of Anonymization, 57  UCLA L. REV. 1701, 1703-04 (2010)];*

12. As   a patient receives care, providers and nurses  will document the patient's answers to medical history questions, generally recording the services  provided as well as information, prescriptions, and potential other datas.

13.  At the end of care,  (a) providers will record the services they provided , and send the charges to the insurance companies for approval [id.]; **(b)** If the  patient received care at a hospital, the patient will generally receive a separate set of hospital charges [id., at 25]; **(c)** after the charges are calculated, they  are sent to a billing office where they are coded, and then sent  out to insurance  companies; **(d)** after   the patient has received treatment, insurance payors will  review  the  details,  including  diagnoses  and  procedures,  make

payments to the medical providers and the  hospital [id., at 24]; **(e)** next, the insurance payor will send the patient an "Explanation of Benefits Statement (EOBS") to notify  them of what has been paid out and how it may affect the patient (such as through a deductible).; **(f)** the hospital or medical provider then sent the patient a bill for any outstanding amount he owns that was not covered by the insurance claim [id., at 24].

### B. Conditional Medicare Payment Procedures:

14.  The term Non-Group Health Plan (**"Non-GHP**") means coverage provided by a liability insurer (including self-insurance), **no-fault insurer**[3] ... where the insurer covers for *services related to the applicable accident or injury*. Medicare is deemed a Secondary Payer or Medicare Secondary Payer ("MSP") where a car insurance, for instance, covers for services related to the applicable motor vehicle accident or injury.Thus, Medicare may not make payment on a MSP claim where payment has been made or can reasonably be expected to be made by a no-fault insurance, such as a car insurance.. *The GHP insurer must be billed first and the primary payer payment information must appear on the claim submitted to a secondary payor, such as Medicare.*

. 15. **On February 10, 2020,** I was driving a Jeep Patriot covered with PIP Insurance when another car, insured by  **PROGRESSIVE  INSURANCE COMPANY,** rear ended the car I was driving,  causing damages to my Jeep Patriot and physically

---

[3] No-fault insurance is a type of car insurance coverage that helps pay for your and your passanger's medical bills if you're injured in a car accident, regardless of who caused the accident. No-fault insurance is also called personal injury protection,or PIP Insurance. The Car I was driving was covered by PIP on 2/10/2020.  Injuries  sustained as a result of the incident of 2/10/2020 had been made or could reasonably expected to be made by the no-fault or liability insurance comp-anies involved and, in fact,  the  other car's insurance company did not dispute    who  was  at  fault,  and  agreed  to  pay  the  claim  promptly [see

Chapter 1 (Backgrounds and  Overview), section 20 (definitions)].

injuring me. Although I did not go to the Hospital, payments to cover the damages to my car and to pay for treatment of any physical injuries had been made or could reasonably be expected to be made within 120 days.

16.   To indicate that claims were presented for payment and were denied by Medicare because the claim was <u>not submitted</u> to the appropriate primary GHP or no-GHP for payment, Medicare contractors will use the following **codes** on the remittance advice sent to: (a) Claim **Adjustment Reason Code 22**-This care may be covered by another payer per coordination of benefit: and (b) **Remittance Advice Remark Code Ma04**-Secondary Payment cannot be considered without the identity of or payment information from the primary payer.The information was either not reported or was illegible, and (c)       *Not following the procedure*s identified in the preceding paragraph may impact medicare's  **reimbursement for conditional payment made**. "

.   17. **By a 10-pages letter dated July 10,2020, however,  I was informed that:**

> "This letter follows *a previous letter notifying you/you*r attorney
>   Of Medicare's priority right of recovery as defined under the
>   The Medicare Secondary Payer Provisions. Conditional
>   Medicare payments for Medicare Part A and Part B Free-For-Services
>   Claims have been made  that you  were  are related to your
>   Your case for Date (2/10/2020] of the Incident listed above. These
>   Conditional payment  are subject to reimbursement to Medicare
>   From proceeds you may receive pursuant to a settlement,
>   Judgment, award, or other payment.
>     As of the date of this letter, and based upon the available
>   Information, Medicare has identifies **$23,533.55** in conditional payment
>   That we believe are associated with your case,"

[see ATTACHMENT A, at Pg.2 of 10].[4] and, to the extent that Medicare made payment as a secondary payer before the expiration **of 120 days** pertaining to the "incident dated 2/10/2020, payment was made in violation of 'Conditional Medicare Payment Procedures" and Medicare Secondary Payer (MSP) Manual [see copy affixed herewith **as Attachment C, atpg. 3 of 9]**.

18. The Provider/Supplier BILLING  Medicare IN THE AMOUNT OF $23,533.55 for goods and services which Relator had never ordered nor received is named 'ST. JUDA MEDICAL EQUIPMENT CORPORATION" doing business as St.Medical Equipment Corp.  in Miami, Florida and, soon immediately upon receiving and reviewing the letter of **July 10, 2020,**  I initially  reported the matter to the HHS OIG as a Healthcare Fraud/identity theft, and sought an investigation.[5]

---

[4]  Before providing treatment, a provider/supplier must present the beneficiary with a **ABM for execution and signature**. After a patient has received treatment, insurance payors will review the details, including diagnoses and procedures, make payments to the medical providers and the hospital. Next, the insurance payor will send the patient an explanation of the benefits statement ("EOB") to notify them of what has been paid out and how it may affect the  patient (such as through a deductible). The hospital or medical provider will then send the patient a bill for any outstanding amount he owns that was not covered by the  insurance claim.As a patient received care, providers and nurses will documents the patient's  answer to medical history question, generally recording  the services provided as well as things like allergy information description of symptoms, dianoses. In the end of   care, providers will   record the services they provided, and   send the charges to the insurance companies for   approval. If the   patient received care at a hospital, the patient will generally receive  a separate set of hospital charges[. After these charges are calculated, they are sent to the billing  officer where they are  code, and then sent out to insurance companies [see RONALD V. BUCCI, MEDINE AND BUSINESS; A PRACTITIONER'S GUIDE 22 (2014)]. St. Jude incorrectly billed Medicare for **(a)** services and goods never provided to the beneficiary between April 30, 2020 and  June 8,2020.

[5]  Medicare "Secondary Payer"  is the term generally used when the Medicare program does not have primary payment responsibility-that is, when another entity has the responsibility for paying before Medicare..Primary payers are those that have the primary responsibility for paying a claim. Rule (MSP") law provides that Medicare won't cover auto accident-related injuries when payment can reasonably be expected to be made by no-fault insurance.The ABN ("Medicare Advance Beneficiary Notice") must be given to the patient prior to any provided service procedure. If there is no signed ABN then you cannot bill the patient and it must be written off if denied by Medicare. Once the beneficiary has signed the ABN, it cannot be modified or revised.
The Advance Beneficiary Notice of Noncoverage ("ABN"), form CMS-R-131. Is issued by the providers, and suppliers to the Original Medicare (fee for services-FFS.  beneficiaries in situations where Medicare payment is expected to be

19. In the --early morning of Tuesday, July 28, 2020, however, I again called St. Jude Medical Equipment Corporation billing Department by dialling phone Number 786-451-9416 in furtherance of obtaining additional information, and it was Defendant Lenksky Hernandez  Jose Santiago (Santiago) who answered the phone on behalf of St. Juda and, during that time, Mr. Santiago identified himself to me as "the Former President of St. Juda Medical Equipment Corporation."

20. During **that conversation of July 28, 2020,** Mr. Santiago personally informed me that he has transferred his interest in St. Juda to another person named MANSO ALEA MICHILE ("Manson") and that, while he was fully aware of the on-going fraudulent scheme  because other victims had frequently  contacted him complaining about  the underlying illegal activities, , he has nothing to do with it,. Mr. Santiago finally admitted to me that he knew that St. Jude was engaged  in the underlying illegal activity, but claimed that he had personally reported the matter to Medicare personnel and encouraged  them, without any favorable result. To defer on payment of bills proffered by St. Jude.. Mr. Santiago blamed the current President of St. Jude, ALEA, for the underlying  illegal activity. The conversation of July 28, 2020 lasted approximately ten minutes.  Mr. Santiago declined to identify all the organizers and participants of the underlying fraudulent scheme.[6] but blamed Alea. I have neither sought nor received treatment or durable medical equipment(s) from St. Juda Medical Equipment Corp. nor had I authorized St. Juda or its agents or employees to use my medicare card number and, to the best of my recollection, I had never done business with St. Juda  Medical Equipment Corp prior, during or after or between  April 30, 2020 and June 8, 2020.

---

[6] A cease and desist letter is a document sent to an individual or business to sto purportedly illegal activity (**"cease"**) and not to restart it (**"desist"**). **Mr.Santiago claimed that he personally informed medicare of the ongoing fraudulent scheme and asked that claims proffered by St. Jude for payment by medicare be investigated or otherwise outright rejected.**

## V-CLAIMS:

## I-FIRST COUNT: CONSPIRACY TO COMMIT HEALTHCARE FRAUD:(18 USC 1347):

### A:Substantive healthcare fraud, in violation of 18 U.S.C. section 1347:

21. Relator repeats and realleges each and every statements contained in the preceeded  paragraphs 1 through 20 with the same force and effect as if fully set forth herein atlength:

22. Federal law makes it a crime for anyone to knowingly or willingly execute or attempt to execute a scheme or artifice: (i) to defraud any health care benefit program, (ii) to obtain by means of false or fraudulent pretenses, representation, or promises, any of the money or property owned by or under the custody or control of health care benefit program. In  connection with the delivery or payment for health care benefits, items, or services, 18 u.S.C. section 1347(a). Conspiracies and attempts to commit health care fraud also are violations of  federal law, 18 U.S.C Section 1349.

23. To be convicted of healthcare fraud, one need not have actual knowledge of 18 U.S.C Section  1347(a) or the specific intent to violate it [18 U.S.C. section 1347(b)].

24. A "healthcare benefit program" is defined as "any public or private plan to contract, affecting commerce, under which any medical benefit, item, or services is provided to any individual, includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract, 18 U.S.C. section 24(b). In this case, Defendant St. Jude billed Medicare for services and goods it did not provide.

.

## II-COUNT TWO: CONSPIRACY TO COMMIT WIRE FRAUD:(18 USC 1343):

25. Relator repeats and realleges each and every statement contained in the preceded paragraphs 1 through 24  with the same force and effects as if fully set forth herein at length:

26.  Federal law also makes it a crime for anyone who, having devised or intending to  devise any scheme or artifice to defraud, to transmit or cause to be transmitted, "by means of wire, radio, or television communication in interstate or foreign commerce,any writing, signs, signals pictures por sounds for the purpose of executing such scheme or artifice," 18 U.S.C. section 13437.

27.  The defendants knowingly  made, used or caused to be made or used, a false record or   statements materials to a false or fraudulent claim and transmitted it across-state lines to the Medicare Office, in violation of the FCA;

28. The defendants have defrauded Medicare using telecommunications or information technology, in violation of  **18 U.S.C. section 1343**.

29. 18 U.S. Section 1001 authorizes criminal penalties against an individual and, section 1128B(a)(1) of the Social security Act authorizes criminal penalties against any individual who, knowingly and willfully, makes or causes to be made any false statement or representation of a material fact in any application for any benefit  under any healthcare program;

30. The Civil False Claim Act…, imposes  liability, in part, on any person who (a) knowingly present, or cause to be presented to an officer or employee of the United States Government; or (b) conspires to defraud the government by getting a false or fraudulently claim allowed or paid;

31. Section 1128A(a) of the Social Security ACT imposes liability, in part, on any person (including an organization or agency of the United States, or any department

or agency thereof, or any state agency ...a claim … that the secretary  determines is a medical or other item or services that the person knows or should now (a) was not provided as claimed; (b) the claims false or fraudulent, [section 1128A(a) of  the  SSA].

32. 18 USC section1035 authorizes criminal penalties against individuals in any matter involving a health care benefit program who knowingly and willfully falsifies, conceals or covered up any kick, scheme, or device a material false or fictitious  or fraudulent statements or entry, in connection with        the delivery of payment for healthcare benefits, items or services.

### III-COUNTHREE: MEDICAL IDENTITY THEFT:

**33.** Relator repeats and realleges each and every statements contained in the preceded paragraphs 1  through 32 heretofore asserted with the same force and effects as if fully set forth herein at length;

34.  Regardless of how the Relator's medical information, such as his medicare card number, was stolen, according to the Medical Identity Fraud Alliance and to the U.S. Department of Health and Human Services,  medical identity fraud  or medical identity theft occurs when  a person's name or other identifying information is used without that person's knowledge or consent to obtain medical services or goods, or to submit false insurance claims for payment, that is medical identity theft. Medical identity theft frequently results in erroneous information being added to a person's medical record, even the creation of an entirely fictitious medical record in the victim's name and, in fact, Victims of medical identity theft may receive the wrong medical treatment, could become uninsurable for life insurance coverage, and may find that their medical records shows diagnoses they  don't actually

have. The effect of this crime can plague a victim's medical and financial status for years to come.

### IV-COUNT IV: FAILURE TO COMPLY WITH ESTABLISHED PROCEDURE:

35. Relator repeats and realleges each and every statements contained in the preceded paragraphs 1 through 34 with the same force and effect as if fully set forth herein at length.

36. Providers or Suppliers of PART A services can request **CONDITIONAL** Non-GHP Payments from Part A contractors on the hardcopy Form CMS 1450, if they have permission from Medicare to bill hardcopy Claims, or 837 Institutional Electronic Claim, using the appropriate insurance value Code (e.g. value Code 14, 15 and 47) and Zero as the value amount. The no fault insurance, however, is deemed a primary payer and, therefore, must be billed **first before billing medicare.**

37. The Contract supplier shall submit Medicare claims for payment of items it has furnished under the contract using the Health Insurance Portability and Accountability Act ("HIPAA") compliant standard electronic format. No paper claims are accepted. Each claim submitted pursuant to the contract must meet all claims processing requirements, including the use of applicable combinations of HCPCS codes and/or modifiers that CMS may use to identify an item that the contract supplier is authorized to furnish under the contract. Payment for each item is described in 42 CFR 414.408 and 414.416 and must be made on an assignment related basis. Any contract supplier admitting to, or convicted of, filing false claims pursuant to the False Claims Act, 31 U.S.C. Sections 3729-3733, is considered a breach of contract [see also Cms-855S]. **Change Request (CR") 7355"** clarifies the procedures a provider/supplier must follow *when **billing Medicare*** for Liability insurance (self insurance)**, no-fault insurance**, and WC Medicare Secondary Payer (MSP") claim.

38.   Under the Medicare Secondary Payer ("MSP") statute, as codified in 42 U.S.C. Section 1395y(b), and its accompanying regulations ("The MSP Provision"), the Centers for Medicare and Medicaid Services ("The CMS") may have an obligation to seek reimbursement of CONDITIONAL PAYMENTS made by Medicare Program (Title XVIII of the Social Security Act) on claims for items and services relating to injuries allegedly sustained by a settling claimant **only** where the following conditions are met: **(a)** there is information on the claim or information on Medicare's Common Working File ("CWF") that indicates the non-fault insurance involved for that specific item oservices; **(b)** there is information on the claim that indicates the physician, provider or other supplier sent the claim to the no-fault insurer first; (c)  there is information on the  claim that indicates the non-fault  did not pay the claim  promptly, and (i) Promptly means payment within *120* days after the earlier of the following: (ii) the date a general liability claim is first filed with an insurance or lien is filed against a potential liability  settlement or (iii) the date a general liability claim is filed with an insurer or a lien is filed again a potential liability settlement;   (iv)  the date the service was furnished or, in the case of inpatient hospital services, the date of discharge. **Medicare issues conditional payments with the intention of reimbursement.**

39.  **For Hardcopy (CMS-1450) Claims**, Providers must identify the other **payer's identity** online **A of Form Locator (FL) 50**, the identifying information about the insured is shown on line A of FL 58-65, and the address of the insured is shown in FL 38 or Remarks (FL80).

40. **All primary payer** amounts and appropriate codes must appear on the provider's claims submitted to Medicare.

41. **Form 837 Institutional Claim**: Providers must provide the primary payer's zero value code paid amount and occurrence code in the 2300 HI. (The appropriate Occurrence Code (2300 HI), coupled with the zeroed paid amount and MSP value code (2300 HI), must be used in no-fault and worker's Compensation) situation, but the primary payer did not make a payment in the promptly period).

.[7]       42. Advance Beneficiary Notice of Noncoverage ("ABN") Medicare's Refund Requirement clause still protects patients who refuse to sign the ABN. Providers must deny services to a beneficiary who has refused to sign an ABA and, in the case sub judice, Relator had never signed an ABA seeking or receiving medical goods, services or treatment from St. Juda between April 30, 2020 and June 8, 2020 related to the accident of February 10, 2020 or otherwise related thereto, in violation of State and Federal FCA.

### IV-<u>COUNT FOURTH  CLAIM UNDER THE HIPAA</u>:

43.   Relator repeats and realleges each and every statement contained in the preceded paragraphs 1 through 42  with the same force and effects as if fully set forth herein at length.

**44. Healthcare fraud** is a crime under HIPAA with the basic crime carrying  a federal prison term of up to ten years in addition to significant financial penalties, 18 U.S.C.. section 1347. Healthcare fraud, like any fraud, demands that false information be represented as truth.

VI-COUNT FIFTH: FLORIDA FALSE CLAIMS ACT VIOLATION:

---

[7] Medicare will make a "CONDITIONAL PAYMENT" for Medicare covered Services in liability, no-fault, and workers compensation situations where **another payer is responsible for payment**, when  (a) a proper claim has been filed, and (b)  the claim is **not expected to be paid prompt within the necessary (120 days)  time frame.**

45. Plaintiff repeats and realleges each and every statements contained in the preceded paragraphs 1 through 44 heretofore asserted with the same force and effects as if fully set forth herein at length.

46. Section 1909(b)(1) of the Fraud Enforcement and Recovery Act of 2009 ("FERA") made numerous amendments to the Federal False Claims Act and requires the State law to establish liability for false or fraudulent claims;

47. Section 1909(b)(2) of the Act requires the State law to contain provisions that are at least as effective in rewarding and facilitating qui tam actions for false and fraudulent claims as those described in 31 USC Section3730 through 3732 of the Federal False Claim ACT.

48. The FFCA, as amended by FERA and the Dodd-Frank Act, provides certain relief, including two times back pay with interest and special damages [see 31 USC Section 3730(h);

49. The Florida False Claims Act does not provide these persons with much protection from retaliation and, therefore, the Florida False Claims Act is not at least as effective in rewarding and facilitating qui tam actions as the Federal False Claims Act[see Fla. Stat. Section 68.087(4)(5);

50. The Federal False Claims Act, as amended by the FERA, provides that for statute of limitation purpose, any government complaint in intervention, whether filed separately or as an amendment to the realtor's complaint, shall relate back to the filing date of relator's complaint, to the extent that the claim of the Government arises out of the conduct, transactions, or occurrence set forth, or attempted to be set forth, in the relator's com-laint [see 31 USC section 3731(c)]

## V-**COUNT FIFTH: REMEDIES:**

51. Relator repeats and realleges each and every statements contained in the preceded paragraphs 1 through 42 heretofore asserted with the same forces and effects as if fully set forth herein at length.

52. The remedies available to patients who fall victim to False bills from Medical identity theft ought to include all legal fees incurred by the victim and any wages due to missing work to deal with repercussions of the medical identity theft.

53. Medical fraud and medical identity theft are covered conducts under the False Claims Act, as codified in 31 USC Sections 3729-3733; the Civil Monetary Penalties Law, as codified in 42 USC Sections 1320a-7a; the Program Fraud Civil Remedies Act, as codified in 31 USC Sections 3801-3812, and the **common law theories of breach of contract,** *payment by mistake, unjust enrichment, and fraud*.; attorney's fees as contemplated by 31 USC Section 3730(d); excluding the defendants from Medicare and medicaid, and other healthcare programs [as defined in 42 USC Section 1329a-7b(f) ] again St. Judah/and/or its officers, directors and employees under 42 USC Section 1320a-7(a) (mandatory exclusion), or 42 USC section 1320a-7(b) or 42 USC section 1320a-7a (permissive exclusion);

54. **Unallowable Costs Defined**: All costs (as defined in the Federal Acquisition Regulation, 48 CFR Section 31.205-47; and Title XVIII and XIX of the Social Security Act, 42 USC Section 1395-1395III-1 and 1396w-5; and regulation and officials program directives promulgated thereunder) *incurred by or on behalf of Medicare, its present or former officers, director, employees, shareholders and agents in connection with matters covered the no-fault insurance*, usion);

55. Under 42 USC Section 3730(d) all *allowable* costs, expenses, attorney's fees -

and granting such other and further reliefs as this honorable Article III Court deems just and proper.

Date: August 17, 2020
New York, New York

Respectfully Submitted,

_____

Mr. Juan Candelaria,
145 East 39th Street,
(POD 39) Room 504,
New York, New York

<u>VERIFICATION:</u>

I, Juan Ramon Candelaria, being duly sworn depose and say that I have read the contents of the foregoing Complaint under the False Claim Acts and, to the best of my knowledges, the same are true and corrects, with the exceptions of improperly spalled words and phrases and statements stated to be made upon information and belief and, even as to those statements stated to be alleged upon information and beliefs, I personally believe them to be true and correct to the best of my ability.

Sworn to before me this ___17th___th day of
August, 2020

_____
NOTARY PUBLIC

Respectfully Submitted,

_Candelaria_

Mr. Juan Candelaria,
145 East 39th Street (POD 39) Room 504
New York, NY 10016

CC: Office of the US Attorney, (Ariana Fajardo Orshan, U.S. Atty. Gen.)
Southern District of Florida,    99 Ne 4th Street,    99 Ne 4th Street,
Miami, Fl 33132, Tel. 305-961-9000;
OFFICE OF THE ATTORNEY GENERAL,
STATE OF FLORIDA, Tallahassee, FL 32399-1050



FROM:

Juan Candelaria
145 East 39th St
(POD 39) Room 504
New York, NY 10016

Angela E. Noble, Clerk
United States District Court
Southern District of Florida
400 North Miami Av
Miami, Florida

NEW
CASE

UNDER SCAL

Utility Mailer
10 1/2" X 16"

dyPost.

7019 2280 0000 4320 9232

USA POSTAGE PAID
$9.40